# COURT OF APPEALS OF VIRGINIA

**Record No. 0424-25-2**

ERNESTINE M. BURTON

v.

JOHN DOE

Present: Chief Judge Decker, Judges Beales and Athey

Argued at Richmond, Virginia

Opinion Issued July 14, 2026[*]

**FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND**
C.N. Jenkins, Jr., Judge

Brenda L. Page (Alan F. Duckworth; Douglass A. A. James; Page Law Firm, P.C., on briefs), for appellant.

E. Brandon Ferrell (Kerrigan O'Malley; Carter & Shands, PC, on brief), for appellee.

**MEMORANDUM OPINION BY**
**JUDGE RANDOLPH A. BEALES**

Ernestine M. Burton sued John Doe, an unidentified driver,[1] for personal injuries she allegedly sustained in an accident. Doe admitted liability and the case proceeded to a jury trial solely on the issue of damages, and the jury found for Doe on the issue of damages—i.e., finding that she suffered no damages. On appeal, Burton argues that the circuit court erred in denying her motion *in limine* to exclude certain video evidence and in rejecting her proposed verdict form.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Because the driver was never identified, Burton sued the driver as a "John Doe" and served the uninsured motorist insurance carrier under Code § 38.2-2206(E).

BACKGROUND

Burton has worked as a bus driver for the Greater Richmond Transit Company for over two decades. On June 30, 2017, she stopped on Jefferson Davis Highway in the City of Richmond to let passengers board and disembark. While she was stopped, a car struck the back of the bus and then fled the scene. Burton sued John Doe to recover for personal injuries that she alleges that she sustained.

Before trial, Burton moved to prohibit Doe from introducing a video showing the passenger area of the bus at the time of the collision. Burton argued that it was irrelevant and was a redundant video of the driver's area—and that "the absence of injuries to other person[s] is not admissible in a personal injury case." Burton further argued that the video showed the inside of the bus—not the collision. Doe's counsel stated that he was "in no way going to argue that no one else was hurt." Doe asserted that the rear-facing video contextualized the other video of Burton that was admitted and "show[ed] the actual accident." Thus, Doe contended, there was not substantial prejudice "that would outweigh the [video's] relevance."

The forward-facing video shows Burton allowing a person to get on and off the bus and pressing a button on the dashboard. Then there is a loud thud before Burton looks around and questions, "Did somebody just run into the back of me? Really?"[2] The rear-facing video shows the rear interior of the bus, including a handful of passengers standing and sitting in the bus, and vehicles are visible through the windows. The rear-facing video then exhibits a loud thud. At the same time, a car is visible through the rear side windows, before it continues to pass by the driver's side of the bus.

The trial court noted Doe's assurance that the video would not be used as evidence of others' injuries, or lack thereof, and found that "to the extent that [the video] does show the

---

[2] Doe played only the first 25 seconds of this video to the jury.

actual collision, . . . that's the best evidence you can have in automobile accident cases." The trial court also opined that the video could actually be a "detriment" to Doe. Thus, the trial court denied Burton's motion.

At trial, Burton testified that a car "ran into the back of the bus." When she exited the bus to survey the damage, she saw "scrapes on the [left rear] bumper," and the metal grate on the driver's side of the bus was "bent to the side" and "looked like a candy cane."

After Burton concluded her case-in-chief, Doe proceeded to put on evidence, including the forward-facing and rear-facing videos. The parties then discussed jury instructions and their competing verdict forms with the trial court. Doe proffered a verdict form which included the options: "We, the jury, on the issues joined, find for Defendant" or "We, the jury, find in favor of the Plaintiff" with blank spaces for the jury to fill in any findings related to damages. Burton's proffered verdict form only allowed the jury to find for her with blank spaces for the jury's damages findings. Doe argued that finding damages is an element of a negligence action and any failure to prove damages should result in a defense verdict. Doe also asserted that, if the jury determined Burton failed to meet her burden, the jury should not be forced to write zero in the blank space for damages. Burton argued that, as Doe had admitted liability, it was appropriate for the jury to find for her and write down zero if it found she failed to prove damages. The trial court adopted Doe's verdict form.

The trial court's instructions to the jury included that Doe had admitted liability and the only issue the jury should "decide is the amount of damages, if any," that Burton was entitled to recover. The jury was instructed that Doe's admission of liability should not influence its decision on damages and that Burton maintained the burden of proof. Jury Instruction 11 outlined factors the jury could consider "[i]n determining the damages to which Ernestine Burton is entitled" and stated that the "verdict should be for such sum as will fully and fairly compensate

- 3 -

the plaintiff for her damages sustained as a result of the defendant's negligence." After argument from counsel and deliberation, the jury returned a verdict for Doe. Burton now appeals to this Court.

## ANALYSIS

### I. Admissibility of the Rear-Facing Video

Burton argues, "The trial court committed reversible error when it denied the Appellant's Motion in Limine and allowed the introduction of an irrelevant video."

Determining the "'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Virginia, statute, Rules of the Supreme Court of Virginia, or other evidentiary principles." Va. R. Evid. 2:402(a). "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "Relevant evidence may be excluded if: (a) the probative value of the evidence is substantially outweighed by (i) the danger

- 4 -

of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact; or (b) the evidence is needlessly cumulative." Va. R. Evid. 2:403.

"The requirement under Rule 2:403 that only 'unfair' prejudice may be considered reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party." *Lee v. Spoden*, 290 Va. 235, 251 (2015). "[T]he mere fact that evidence is highly prejudicial to a party's claim or defense is not a proper consideration in applying the balancing test. Rather, a trial court must determine whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects." *Id.* at 252 (emphases in original). "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* at 251.

Unfair prejudice is "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt [or liability] on a ground different from proof specific to the [case elements]" and refers to evidence which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* at 251-52 (alterations in original) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

Here, the rear-facing video was relevant to the question of Burton's potential damages. The video shows Doe's collision with the side of the bus, including the force of impact, and was the only video admitted that showed the actual collision. Thus, the video helped contextualize the first video and also could have aided the jury in determining whether the collision injured Burton as she claimed.

Furthermore, the simple fact that the rear-facing video did not show a significant collision is not a reason for exclusion, even if the lack of a significant collision did prejudice Burton's

claim for damages.[3]  *See id.*  Burton fails to demonstrate that the video was unfairly prejudicial, that the prejudice substantially outweighed the probative value, and that reasonable jurists could not have reached a different conclusion.  *See id.*; Va. R. Evid. 2:403.

Burton correctly notes that "evidence of the *absence* of other injuries is not admissible in a negligence action when timely objection to it is made" because "[s]uch evidence introduces into the trial collateral issues, remote to the issue at trial, which would tend to distract, mislead, and confuse the jury."  *Goins v. Wendy's Int'l, Inc.*, 242 Va. 333, 335 (1991) (emphasis in original).  However, evidence is frequently "admissible for one purpose yet inadmissible for another purpose."  *Vanhook v. Commonwealth*, 40 Va. App. 130, 135 (2003).  Doe assured the trial court before trial that the video would not be used to show absence of other injuries.  When Doe played the video for the jury, Doe did not comment on the passengers' reactions, or lack thereof, and Doe's counsel did not comment on the passengers during his closing argument.[4]  Therefore, the trial court did not abuse its discretion in permitting Doe to introduce the rear-facing video.  *See Williams*, 71 Va. App. at 487.

---

[3] In her brief to this Court on appeal, Burton argues that the jury would inherently use the video for an improper purpose like the effect of the collision on the other passengers.  Burton's counsel could have requested the trial court give a limiting instruction to the jury, but Burton did not make any such request for a limiting instruction.  *See* Rule 5A:18.

[4] Burton asserts, "Clearly, Defense Counsel was referring to 'all' persons in both edited videos and violated the exclusionary rule."  Burton contends that Doe's closing statement clearly referred to the other passengers, but Burton did not object to Doe's closing statement.  Nonetheless, a review of the passage makes clear that Doe was not referring to the passengers, but rather to the videos showing what did, or did not, happen to Burton.  In his closing argument, Doe's counsel argued that Burton's "body doesn't even move."  Then he continued on to argue, "What is better than a video?  That shows the vehicle striking the bus and shows what happened to the person inside it or what didn't happen."

## II.  The Verdict Form

Burton further argues, "The trial court committed reversible error when it rejected the Plaintiff's verdict form and accepted the Defendant's verdict form, thus contradicting the agreed upon Jury Instructions 7 and 11."[5]

"The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff."  *Al-Saray v. Furr*, 304 Va. 19, 28 (2025) (quoting *Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006)).  Here, Doe admitted liability.

"[I]n the context of an automobile accident case, an admission of liability relieves the plaintiff of the burden of proving that the defendant was negligent and that defendant's negligence was a proximate cause of the accident."  *Gilliam v. Immel*, 293 Va. 18, 26 n.7 (2017).  "An admission of liability, however, does not admit compensable damage.  Even a finding of liability does not require a finding of some compensable damage."  *Id.*; *see also Shumate v. Mitchell*, 296 Va. 532, 550 (2018) (noting plaintiff "had the burden of proving her damages by a preponderance of the evidence").

The trial court instructed the jury on Doe's admission of liability.  The instructions given to the jury included Instruction No. 7: "The Defendant has admitted that he is liable for any injury the Plaintiff received from the accident.  Therefore, the only issue that you have to decide is the amount of damages, if any, the Plaintiff is entitled to recover."  The jury was instructed that Burton was entitled to recover and that it was Burton's burden to prove the amount of damages, if any.

Furthermore, the verdict form stated, "We, the jury, *on the issues joined*, find for Defendant." (Emphasis added).  The "issue[] joined" was the issue of damages, and the verdict

---

[5] Internal references in appellant's brief removed for clarity.

form specifically allowed the jury to find for John Doe—or Burton—on that issue.  Thus, the jury was properly instructed on the sole issue before it, and "[j]uries are presumed to follow their instructions."  *Davison v. Commonwealth*, 69 Va. App. 321, 331 (2018).

CONCLUSION

For all of the foregoing reasons, we do not disturb the circuit court's judgment.

*Affirmed.*